No. 23-2165

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

MR. DEE'S INC., on behalf of themselves and all others similarly situated, RETAIL MARKETING SERVICES, INC., AND CONNECTICUT FOOD ASSOCIATION, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.

INMAR, INC., CAROLINA MANUFACTURER'S SERVICES, CAROLINA SERVICES, AND CAROLINA COUPON CLEARING, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Middle District of North Carolina
No. 1:19-CV-00141-WO-LPA
Hon. William L. Osteen, Jr.

---

## Appellants' Opening Brief

---

Daniel Low
Daniel Kotchen
KOTCHEN & LOW LLP
1918 New Hampshire Ave. NW
Washington, DC 20009
(202) 471-1995
dkotchen@kotchen.com
dlow@kotchen.com

Kearns Davis
Matthew B. Tynan
BROOKS PIERCE MCLENDON
HUMPHREY & LEONARD LLP
P.O. Box 26000
Greensboro, NC 27420
(336) 271-3174
kdavis@brookspierce.com
mtynan@brookspierce.com

*Attorneys for Plaintiffs-Appellants Mr. Dee's Inc., et al.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION .......................................................................... 1

QUESTIONS PRESENTED .......................................................... 4

STATEMENT OF JURISDICTION ............................................... 5

STATEMENT OF FACTS ............................................................. 5

SUMMARY OF THE ARGUMENT ............................................. 13

STANDARD OF REVIEW .......................................................... 16

ARGUMENT ............................................................................... 17

   I.    The Fixed-List Class Is Not Impermissibly "Fail-Safe." .......... 18

      A.    The Proposed Definition Is Not Fail-Safe. ..................... 18

          1.    The Fixed-List Class Is Not Fail-Safe. ................ 21

          2.    The Criteria Used in Preparing the Fixed List Are Not Fail-Safe. ...................................................... 26

      B.    Rule 23 Does Not Contain a Prohibition on Fail-Safe Classes. ........................................................................ 32

      C.    The Fixed-List Class Satisfies Rule 23. .......................... 36

   II.    The District Court Erred in Rejecting the Minimum-Purchase Class as Unascertainable. ....................................................... 40

   III.    The District Court Erred in Finding Uninjured Class Members Defeated Predominance of the All-Payer Class. ....................... 49

      A.    The District Court's Factual Finding on the Number of Uninjured Class Members Was Clearly Erroneous. ..... 50

      B.    The District Court Imposed an Incorrect Legal Standard for Uninjured Class Members. ....................................... 52

      C.    The All-Payer Class Satisfies Predominance. ............... 54

   IV.    If Necessary, the Court Should Revise the Class Definition.... 65

CONCLUSION ........................................................................... 66

# TABLE OF AUTHORITIES

## Cases

*Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) .... 49

*Abella v. Student Aid Ctr., Inc.*, 15-cv-3067, 2015 WL 6599747 (E.D. Pa. Oct. 30, 2015) ......................................................................................... 25

*Adair v. EQT Prod. Co.*, 320 F.R.D. 379 (W.D. Va. 2017) .............. passim

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .............. 28, 35, 53

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) . 55, 58

*Bennett v. GoDaddy.com LLC*, No. CV-16-03908, 2019 WL 1552911 (D. Ariz. Apr. 8, 2019) ................................................................................... 43

*Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891, 2021 WL 2138781 (M.D. Fla. May 11, 2021) ...................................................... 24

*Bernstein v. Serv. Corp. Int'l*, No. 17-cv-4960, 2018 WL 6413316 (E.D. Pa. Dec. 6, 2018) ............................................................................ 34, 37

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001) .. 43, 44

*Black v. Occidental Petroleum Corp.*, 69 F.4th 1161 (10th Cir. 2023)... 56

*Boggs v. Divested Atomic Corp.* 141 F.R.D. 58 (S.D. Ohio 1991) ........... 48

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) .............................. 16

*Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-CV-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020) ................................................. 20, 25

*Butela v. Midland Credit Mgmt. Inc.*, 341 F.R.D. 581 (W.D. Pa. 2022)  22

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ......... 57, 64

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) .......................... passim

*Chado v. Nat'l Auto Inspections, LLC*, No. 17-cv-2945, 2019 WL 1981042 (D. Md. May 3, 2019) ........................................................................ 66

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) ................ 19

*Cummins v. Ascellon Corp.*, No. 19-cv-2953, 2020 WL 6544822 (D. Md. Nov. 6, 2020) ..................................................................... 65

*Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D. Colo. 1990) .................... 42, 47

*Dennis v. Saks & Co.*, 74Civ.4419, 1975 WL 909 (S.D.N.Y. July 10, 1975) ........................................................................................... 49

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014).................... passim

*Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272 (E.D. Va. 2014) ..................................................................................... 45, 46

*Fitzmorris v. N.H. Dep't of Health & Hum. Servs.*, No. 21-CV-25, 2023 WL 8188770 (D.N.H. Nov. 27, 2023) ................................................... 35

*Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 WL 2608691 (S.D. Ohio June 16, 2017) ................................................. 25, 29

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ........ 16

*Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89 (W.D.N.Y. 2019) ....................................................................................... 31

*Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611571 (E.D. Va. Sept. 2, 2016) ................................................. 49

*In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) .............. passim

*In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ................................................................. 62

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, No. 02-cv-6030, 2006 WL 891362 (D.N.J. Apr. 4, 2006) ................................................. 63

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) . 55

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018)................................................................. 33, 35

*In re Marriott Int'l, Inc., Customer Data Security Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) ................................................................. 49

*In re Nexium Antitrust Litig*, 777 F.3d 9 (1st Cir. 2015) ............ 35, 53, 63

*In re Polyester Staple Antitrust Litig.*, No. 3:03CV1516, 2007 WL 2111380 (W.D.N.C. July 19, 2007) ....................................................... 51, 62, 63

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.2d 618 (D.C. Cir. 2019) ...................................................................... 53, 57, 63, 64

*In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012).................................. passim

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 6:15-MN-2613, 2018 WL 11303199 (D.S.C. June 20, 2018) ......................................... 24

*In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328 (D. Md. 2012) ....................................................................................................... 47, 55, 58

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014)............ 62

*In re White*, 64 F.4th 302 (D.C. Cir. 2023) ...................................... passim

*In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227 (4th Cir. 2021) ..... 60

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020) .................................................. 41, 55

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) .......................................................... 49

*Iverson v. Advanced Disposal Servs., Inc.*, No. 3:18-CV-867-J-39, 2019 WL 2509811 (M.D. Fla. June 7, 2019) ................................................... 31

*Johnson v. City of Grants Pass*, 72 F.4th 868 (9th Cir. 2023)................ 22

*Jones v. Bock*, 549 U.S. 199 (2007) .................................................. 35, 45

*Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) . 18, 22, 31

*Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945 (11th Cir. 2015) ............ 25

*Koon v. United States*, 518 U.S. 81 (1996)................................................ 16

*Lacy v. Cook Cnty., Ill.*, 897 F.3d 847 (7th Cir. 2018)............................ 52

*Lester v. Pay Car Mining, Inc.*, No. 5:17-CV-00740, 2018 WL 2728033 (S.D.W. Va. June 6, 2018) .................................................................... 22

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997).................. 43

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ... 37, 38, 41

*McKeage v. Bass Pro Outdoor World, L.L.C.*, No. 12-03157, 2014 WL 12754996 (W.D. Mo. Oct. 7, 2014) ................................................ 21, 29

*Melgar v. CSK Auto, Inc.*, 681 F. App'x 605 (9th Cir. 2017)............. 30, 34

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ......................................................................................................... passim

*Moore v. Primecare Med., Inc.*, No. 3:19-CV-106, 2020 WL 1248976 (W.D. Pa. Mar. 16, 2020) .............................................................................. 38

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) .......... 19, 20

*Newton v. Am. Debt Servs., Inc.*, No. C-11-3228, 2015 WL 3614197 (N.D. Cal. June 9, 2015) .................................................................. 38, 39, 42

*Nypl v. JP Morgan Chase & Co.*, No. 15-cv-9300, 2022 WL 819771 (S.D.N.Y. Mar. 18, 2022)..................................................................... 24

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ....................................................................... passim

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019).................................... 19

*Parish v. Sheriff of Cook Cnty.*, No. 07 C 4369, 2016 WL 1270400 (N.D. Ill. Mar. 31, 2016)................................................................................. 25

*Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2014 WL 1875266 (N.D.W. Va. Feb. 24, 2014)........................................................................ 34, 37

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007) ............................................................................................................... 66

*Redditt v. Miss. Extended Care Ctrs., Inc.*, 718 F.2d 1381 (5th Cir. 1983) ............................................................................................................... 17

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ............................................................................................ ………19, 56, 63

*Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182 (10th Cir. 2023)..... 34

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ......... 55, 56

*Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) ................... 29

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .................. passim

*Vaughn v. CSC Credit Servs., Inc.*, No. 93 C 4151, 1994 WL 449247 (N.D. Ill. Mar. 1, 1994).................................................................................. 44

*Vizcaino v. United States District Court*, 173 F.3d 713 (9th Cir. 1999). 34

*Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020).............. 28

*Wenig v. Messerli & Kramer P.A.*, No. 11-CV-3547, 2013 WL 1176062 (D. Minn. Mar. 21, 2013) ......................................................................... 46

*Woodward v. GEICO Advantage Ins. Co.*, No. CV GLR-21-952, 2022 WL 2953053 (D. Md. July 25, 2022)........................................................... 26

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ... 19, 29

**Statutes**

15 U.S.C. § 1 ........................................................................ 5

15 U.S.C. § 15 ...................................................................... 5

28 U.S.C. § 1292 .................................................................. 5

28 U.S.C. § 1331 .................................................................. 5

28 U.S.C. § 1337 .................................................................. 5

**Rules**

Fed. R. Civ. P. 23……………………………………………….passim

**Treatises**

Geoffrey C. Shaw, Class Ascertainability, 124 Yale L.J. 2354 (2015) ... 36

Manual for Complex Litig. (4th ed.) ....................................... 46

# INTRODUCTION

This is an antitrust class action arising from a written anti-competitive conspiracy between two main competitors in the coupon processing industry: International Outsourcing Services ("IOS"); and Defendants-Appellees Inmar Inc. and its coupon processing subsidiaries (collectively, "Inmar"). Plaintiffs-Appellants Mr. Dee's Inc. et al. ("Mr. Dee's") have presented compelling evidence of an antitrust violation. That evidence includes sworn admissions by IOS's CEO—who devised the conspiracy—that the conspirators entered into "non-competes" for the purpose of "head[ing] off a price war" and "allow[ing] us to escalate our freight revenue," and that, as intended, the conspiracy increased the conspirators' market power and allowed them to "dramatically" increase coupon processing shipping fees paid by manufacturers and retailers. The conspiracy remained in effect from 2001 to 2007, when IOS's CEO was indicted for fraud along with other IOS executives. The district court denied Inmar's summary judgment motion on Mr. Dee's only claim: that Inmar allocated customers and markets and fixed prices in violation of Sherman Act § 1. Dkt. 271 at 32-33.

Mr. Dee's appeals the district court's incorrect denial of certification of the proposed manufacturer class, and two manufacturer classes proposed by Mr. Dee's in the alternative that addressed concerns raised by the district court. The district court only granted certification of a retailer class that suffered a fraction of the harm of manufacturers.

The district court primarily erred because it construed Mr. Dee's proposed class of 5,280 listed manufacturers ("Fixed-List Class") as an impermissible "fail-safe" class. In fact, the Fixed-List Class was the *opposite* of a "fail-safe" class, because class membership was fixed and already identified. Moreover, the district court erred in imposing a standalone fail-safe prohibition when the Fixed-List Class satisfied Rule 23's explicit requirements. Its denial of certification of the Fixed-List Class should be reversed.

Alternatively, one of the other two proposed manufacturer classes should be certified.

Mr. Dee's second proposed class consists of manufacturers that met minimum purchase requirements ("Minimum-Purchase Class"). Class members were specifically identified based on objective criteria. Nonetheless, the district court rejected this class as "unascertainable" on

the grounds that some injured class members were arbitrarily excluded (making the class definition underinclusive), and because a minimum-purchase requirement was not connected to the harm alleged. The district court erred in applying such requirements, which this Court has never recognized. Even if those were legitimate requirements of ascertainability, the Minimum-Purchase Class satisfies such requirements, because the purchase requirements limit the class to those with greater exposure to the conspiracy, sufficiently tying the class to the harm.

At the district court's request, Mr. Dee's proposed a third class consisting of all manufacturer purchasers ("All-Payer Class"). The district court then rejected the All-Payer Class as overinclusive, and declined certification based on its finding that the class included 2,533 uninjured class members. This finding was contrary to the evidence, and the district court erred in weighing the persuasiveness of merits evidence in deciding class certification. Even if many class members might ultimately be found to be uninjured, they easily could be winnowed out, such that their inclusion should not defeat predominance.

By declining to certify *any* class of manufacturers, the district court applied improper legal standards inconsistent with both the letter and the purpose of Rule 23, effectively denying recourse to the group of victims whom the conspirators' conduct most harmed. This Court should correct those errors, ensure the proper standard is applied, and allow manufacturers to pursue appropriate class-wide relief.

## QUESTIONS PRESENTED

1.    Did the district court err in rejecting a fixed list of class members as fail-safe where inclusion on the list was not based on liability, but whether they can rely on the same common evidence, and where class members will be bound by the outcome regardless of any determination on the merits at trial?

2.    Did the district court err in rejecting a minimum-purchase class as unascertainable where Mr. Dee's expert has already identified every proposed class member?

3.    Did the district court err in rejecting a class of all manufacturer payers because of uninjured class members where Mr. Dee's offers common evidence of classwide injury, persuasiveness of

evidence is a merits question for the jury, and any uninjured members can be winnowed out without individual inquiries?

## STATEMENT OF JURISDICTION

The district court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a) because Mr. Dee's asserts an antitrust claim under 15 U.S.C. § 15 for a violation of 15 U.S.C. § 1.

This Court granted Mr. Dee's Rule 23(f) Petition on November 6, 2023. JA2119. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f).

## STATEMENT OF FACTS

Mr. Dee's alleges that Inmar entered into a *per se* unlawful anti-competitive conspiracy with its main competitor, IOS, that resulted in overcharges in coupon-processing shipping fees to manufacturers and retailers.

Grocery stores and other retailers collect coupons redeemed at their stores by consumers and send them to retailer coupon processors. Retailer coupon processors sort and count the coupons, and send manufacturer processors the coupons and invoices for coupon values and processing fees, including shipping fees (also known as "freight fees").

"Shipping fee" is a misnomer, as it is "a market level fee" no longer tied to the physical movement of coupons. JA1001. Manufacturer processors audit coupons for accuracy and pass on invoices to manufacturers, including the shipping fees imposed by retailer processors. Manufacturers then remit payment for the coupon value and fees. Many manufacturers simply pay shipping fees, but some manufacturers "charge back" these fees to retailers. Retailer processors keep the shipping fees paid by manufacturers and often seek payment from their retailer clients for any shipping fees unpaid by manufacturers.

IOS and Inmar competed intensely as both retail and manufacturer processors. In 2000, IOS's CEO Chris Balsiger "threaten[ed] a price war" with Inmar if Inmar didn't discontinue certain business practices that reduced IOS's market share. JA1478. Balsiger subsequently "c[a]me up with [the] idea" to enter an agreement with Inmar. JA1471. He testified: "I call[ed] my arch-competitor.... And I proposed a joint venture to [Inmar].... And that was to head off a price war on coupons and ... allow us to escalate our freight revenue... [and] allowed us to protect certain accounts. It created noncompetes by doing deals back and forth[.]" JA1471-1472. The conspirators then "construct[ed]" agreements to

provide a veneer of legitimacy for their anticompetitive conspiracy. JA1517.

In 2001, Inmar and IOS entered into a series of secret inter-related written non-compete agreements, along with "oral agreements" they elected not to commit to writing. JA1554-1639. The parties subsequently stopped competing for all customers, not just those subject to the written non-competes, JA1646-1647, JA1651, and IOS exited the manufacturer market. JA1472. Balsiger testified to the anticompetitive effect: "Once we did the joint venture the combined market share ... gave us 87 percent control of the market.... I increased my fees once we had that control, and I had a noncompete, I increased my fees dramatically." JA1477, JA1417.

IOS's primary strategic goal became to "[i]ncrease fees (i.e., chargeback fees, freight fees)." JA1460, JA1663. Similarly, Inmar's pricing strategy included "higher fees billed to manufacturers with increases in S[hipping]&H[andling]." JA1666. Inmar followed IOS's lead on shipping fees. JA1683. When customers complained, "it wasn't an issue" because "there was no place for these accounts to go" because of the non-competes. JA1479.

The conspiracy continued until 2007, when IOS and several IOS executives were indicted for fraud and the conspirators terminated noncompete portions of their agreements. JA1705-1708. This case, which was filed in 2008, was stayed from 2008 until 2018 pending resolution of the criminal case. Dkts. 72, 107.  IOS CEO Balsiger was convicted.

Mr. Dee's originally moved for certification on June 30, 2020, of manufacturer and retailer classes of direct purchasers of coupon processing services during the class period. Dkt. 151 at 10-11.

Subsequently, Mr. Dee's learned through discovery that Inmar had withheld transactional data that was critical to analyzing impact and damages. Dkt. 167 at 12-13. The district court granted a motion to compel production, finding that Inmar "did not properly respond to [plaintiffs' document] Request." Dkt. 187 at 28. After the data was produced, Mr. Dee's economic expert, Dr. Grace, conducted regression analyses of Inmar's transactional data, controlling for volume and other non-conspiratorial factors. JA1718-1725. She determined that, after the conspiracy began, shipping fees increased significantly, including as compared to non-conspirator NCH, which she used as a benchmark:



JA1714. Despite making conservative assumptions, her regression found observable injury for most purchasers. JA1719-1726, JA2089-2090 (citing Dkt. 277-25 at App'x A); JA1869-1917. Because increased volume led to lower prices, the regression could not observe harm for manufacturers that significantly increased their volume during the conspiracy period (compared to the pre-conspiracy period), but this did "not [mean] that those [manufacturers] weren't harmed." JA2014. In Appendix A of her Supplemental Report ("Appendix A"), Dr. Grace identified manufacturers for which her regression was able to observe price increases. JA1728-1828.

Based on Dr. Grace's new analysis, Mr. Dee's filed a supplemental brief in support of class certification, proposing a new class definition: "manufacturers listed in 'Appendix A,' … which are those that paid observably higher CCC or IOS shipping fees during the conspiracy period." Dkt. 193 at 4.

The new class definition mooted some of the original briefing. The district court therefore denied the original certification motion without prejudice and ordered the parties to re-brief the issues around the new class definition. JA0981.

Mr. Dee's filed a second certification motion on October 12, 2021. JA1259-1252. Mr. Dee's defined the proposed manufacturer class in its brief as "[m]anufacturers listed in Appendix A[] … , which are those that directly paid observably higher CCC or IOS shipping fees during the conspiracy period." Dkt. 255 at 8. In the cover motion summarizing the brief, Mr. Dee's explained that it sought to certify a class of "manufacturers that directly paid observably higher CCC or IOS shipping fees during the class period … identified on the list attached." JA1249. Mr. Dee's explained that class membership is "[f]ixed" and

includes listed manufacturers "regardless of the merits outcome." Dkt. 262 at 1-2.

Focusing on the description of the class in the cover motion, the district court found the class impermissibly "fail-safe," "because class membership is conditioned on having suffered antitrust injury or impact in the form of increased shipping fees." JA1447 (citing Dkt. 254). The court expressed that "the problem with fail-safe classes 'often should be solved by refining the class definition rather than by flatly denying class certification on that basis.'" JA1449 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Rather than refining the proposed class definition, or considering the definition proposed or described in Mr. Dee's briefing (rather than the cover motion), the court denied the motion without prejudice, inviting a renewed certification motion. JA1449.

Mr. Dee's filed a third round of certification briefing proposing two different manufacturer-class definitions: (1) "manufacturers listed in [Dr. Grace's] App[endix] A" ("Fixed-List Class"), JA2097 (citing Dkt. 287 at 18); and (2) manufacturers that made specified minimum purchases of shipping fees (where greater purchases increased the likelihood of

suffering an antitrust injury, such that there were only a *de minimis* number of potentially uninjured class members) ("Minimum-Purchase Class"). Dkt. 277 at 9.

At the district court's request (JA2032-2033), the parties subsequently briefed the feasibility of a third proposed manufacturer class definition: all manufacturer payers, without any minimum purchase requirements ("All-Payer Class"). Dkts. 298, 303.

The district court certified a class composed of all 323 retailer payers, but denied certification of the three proposed manufacturer classes, each of which contained thousands of manufacturers and most of the damages. JA2117. The Court rejected the Fixed-List Class as an "'impermissible fail-safe class[],'" even though membership was fixed, because "Plaintiffs generated the list[] of manufacturers ... from Dr. Grace's regressions which sought to determine which manufacturers ... 'paid observably higher shipping fees.'" JA2097 (quoting Dkts. 257-25, 275).

The Court rejected the Minimum-Purchase Class as "unascertainable," even though every member had been identified, because the definition "arbitrarily exclude[d] some injured parties," and

12

because there was purportedly "no connection between Defendants' allegedly impermissible activities and the classes Plaintiffs seek to certify." JA2074-2075.

Finally, the Court rejected the All-Payer Class based on its determination that 2,533 class members were uninjured, and because it assumed that individualized issues would therefore predominate. JA2089-2098.

Mr. Dee's timely filed a Rule 23(f) petition on September 6, 2023, and the petition was granted on November 6, 2023. JA2199.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in denying certification of each of the three proposed manufacturer classes.

1.    Mr. Dee's proposed a Fixed-List Class consisting of 5,280 specifically identified manufacturers. The district court rejected the class as "fail-safe." In a fail-safe class, however, membership is contingent on liability, such that a potential member is excluded from the class if they lose on the merits. *In re White*, 64 F.4th 302, 303 (D.C. Cir. 2023).  The Fixed-List Class does not fit this definition, because membership is immutable and not contingent on liability or any other finding.

Mr. Dee's appropriately created the Fixed-List Class by including only manufacturers that will rely on the same common evidence—that is, damage calculations in Dr. Grace's regression. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) ("the court may redefine [an] overbroad class to include *only those members who can rely on the same body of common evidence* to establish the common issue") (emphasis added).

The district court erred in imposing a stand-alone, extra-textual prohibition on fail-safe classes rather than applying the carefully structured requirements of Rule 23. *White*, 64 F.4th at 313. The Fixed-List Class satisfies Rule 23, including ascertainability, because class members have already been identified.

2.    The district court rejected the Minimum-Purchase Class definition as not "ascertainable," but this was erroneous because class members have already been identified—ascertained—based on objective criteria. In rejecting the class, the district court applied inappropriate "ascertainability" requirements that have never been recognized by this Court. Specifically, the lower court required the minimum-purchase restrictions to be sufficiently "connect[ed]" to Inmar's "impermissible

activities," and would preclude "arbitrary[]" exclusion of injured purchasers. JA2074. Even if such requirements were appropriate, the proposed Minimum-Purchase Class satisfies them, because the minimum-purchase restrictions limit the class to those with greater exposure to the conspiracy and are therefore not arbitrary.

3.    The district court rejected the All-Payer Class as including too many uninjured class members. The court found that 2,533 class members were uninjured, but the evidence does not support this finding. Mr. Dee's presented common evidence that all class members were harmed, and it was inappropriate for the district court to weigh the evidence and rule on its persuasiveness on the merits.

The district court further erred in applying a *per se* rule, independent of Rule 23's requirements, precluding certification of classes with too many uninjured members. *Olean*, 31 F.4th at 669 & n.13 (rejecting "a per se rule that a class cannot be certified if it includes more than a de minimis number of uninjured class members" as "inconsistent with Rule 23(b)(3)"). The All-Payer Class satisfies Rule 23, including the predominance requirement, where injury will be determined using

common evidence, and where any uninjured members can easily be winnowed out without individual inquiry.

4.    Alternatively, rather than denying certification of any manufacturer class, the Court should redefine the class to avoid any fail-safe, overbreadth, or similar issues. *EQT Production Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014).

## STANDARD OF REVIEW

This Court "typically review[s] a district court's certification order for abuse of discretion." *Brown v. Nucor Corp.*, 785 F.3d 895, 901 (4th Cir. 2015). "A material error of law is always an abuse of discretion." *White*, 64 F.4th at 312 (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)). For example, "[w]hen a court misapprehends or fails to apply the law with respect to underlying issues, it abuses its discretion." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 446 (4th Cir. 2003). A district court also abuses its discretion "when it materially misapplies the requirements of Rule 23." *Brown*, 785 F.3d at 902. Thus, in *White*, the D.C. Circuit found an abuse of discretion where the district court denied certification "based on a stand-alone and extra-textual rule against 'fail-safe' classes, rather than applying [Rule] 23(a)." 64 F.4th at 313.

Finally, a district court abuses its discretion when it either decides certification based on its assessment of the merits rather than Rule 23's requirements, *Redditt v. Miss. Extended Care Ctrs., Inc.*, 718 F.2d 1381, 1388 (5th Cir. 1983), or when it "clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

## ARGUMENT

Instead of properly applying Rule 23's requirements, the district court applied extra-textual fail-safe and uninjured class member requirements that have never been recognized by this Court, applied expanded ascertainability requirements that have never been recognized by this Court, misapplied the requirements, improperly weighed evidence on the merits, and made erroneous findings.

Each of the three proposed classes satisfies the requirements for class certification where: (1) the Fixed-List Class is not impermissibly fail-safe; (2) the Minimum-Purchase Class is readily ascertainable; and (3) the All-Payer Class will rely on common evidence of class-wide injury. Alternatively, the class should be redefined to satisfy the relevant criteria.

I.    **The Fixed-List Class Is Not Impermissibly "Fail-Safe."**

The district court abused its discretion in rejecting the Fixed-List Class as impermissibly fail-safe because: (a) the proposed definition does not meet the definition of a fail-safe class; (b) the district court improperly imposed an extra-textual, "fail-safe" requirement independent of Rule 23; and (c) the proposed Fixed-List Class satisfies Rule 23.

A.    **The Proposed Definition Is Not Fail-Safe.**

A "fail-safe" class definition is one in which "membership can only be ascertained through 'a determination of the merits of the case,'" such as "a class defined as 'those shareholders whom Company X defrauded.'" *White*, 64 F.4th at 303 (quoting *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012)). A "fail-safe" class "precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010); *see also Adair v. EQT Prod. Co.*, 320 F.R.D. 379, 420 (W.D. Va. 2017) ("A fail-safe class ... 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'") (quoting *Messner*, 669 F.3d at 825). In other words, a fail-safe class "includes only those who are *entitled* to relief" and

"cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).[1]

Courts have identified two problems with fail-safe classes. First, "class members either win or, by virtue of losing, are defined out of the class" and therefore are not bound by the judgment. *White*, 64 F.4th at 313. This "sort of class ... 'would allow putative class members to seek a remedy but not be bound by an adverse judgment.'" *Orduno v. Pietrzak*, 932 F.3d 710, 716-17 (8th Cir. 2019) (quotation omitted). This raises a "fairness problem for the defendant: the defendant is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015).

---

[1] Other circuit courts have offered substantially similar definitions of "fail-safe." *See, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) ("membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury"); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("'preclude[s] membership unless the liability of the defendant is established'") (quotation omitted); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015) ("'it is virtually impossible for the Defendants to ever win the case, with the intended class preclusive effects'") (quotation omitted); *Rodriguez*, 695 F.3d at 369-70 ("membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability").

Second, "class members are not ascertainable" before trial because the class definition requires a ruling on the merits of the claim in order to determine who is included in the class. *Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-CV-00061, 2020 WL 6876292, at *2 (E.D. Va. June 22, 2020). "[I]f membership in a class depends on a final resolution of the merits, it is administratively difficult to determine class membership early on." *White*, 64 F.4th at 313.

The "key to avoiding this [fail-safe] problem is to define the class so that membership does not depend on the liability of the defendant." *Mullins*, 795 F.3d at 660.

Mr. Dee's seeks certification of a Fixed-List Class that is defined as the "manufacturers listed in App[endi]x A" of Docket 277-25, which names 5,280 specific manufacturers. JA2097 (proposed definition); JA1728-1828 (listing proposed class members). The proposed definition omitted any reference to how the list was created, to avoid the possibility that the court would construe such an explanation as additional criteria for membership. Mr. Dee's proposed definition is appropriate because: (1) the explicit class definition does not meet the definition of a fail-safe class; and (2) even if it were appropriate to examine the underlying

20

criteria used to create the Fixed-List Class, those criteria are not fail-safe.

### 1. The Fixed-List Class Is Not Fail-Safe.

The district court rejected Mr. Dee's proposed Fixed-List Class definition as fail-safe not because of the class definition itself, which consists of a list of specified manufacturer purchasers, but because of how "Plaintiffs generated the list[] of manufacturers." JA2097. How Mr. Dee's "generated the list" is not part of the class definition, however, and courts examining whether a class is fail-safe look only at the class definition itself, not some other set of criteria. *Adair*, 320 F.R.D. at 420 (finding class definition based partly on list was not fail-safe without inquiring whether a class defined based on the criteria used to create the list would be fail-safe).

Here, the proposed definition is not fail-safe for numerous reasons. First, qualification for membership in the proposed class is based on a fixed list. *McKeage v. Bass Pro Outdoor World, L.L.C.*, No. 12-03157, 2014 WL 12754996, at *3 (W.D. Mo. Oct. 7, 2014) (finding specific list of class members didn't create "fail-safe class," because it did not "condition class membership on being entitled to relief").

Second, the proposed definition is not "'framed as a legal conclusion,'" and "does not use legal terms of art." *Lester v. Pay Car Mining, Inc.*, No. 5:17-CV-00740, 2018 WL 2728033, at *5 (S.D.W. Va. June 6, 2018) (holding that class was not fail-safe where definition was not "'framed as a legal conclusion'" and "d[id] not use legal terms of art"); *Butela v. Midland Credit Mgmt. Inc.*, 341 F.R.D. 581, 603 (W.D. Pa. 2022) (holding that class was not fail-safe where definition was not "'framed as a legal conclusion'") (quoting *Rodriguez*, 695 F.3d at 370).

Third, membership does not "'depend[] on whether the person has a valid claim,'" and will not change even if it is later determined that class members are not entitled to relief. *Adair*, 320 F.R.D. at 420 (quoting *Messner*, 669 F.3d at 825); *accord Johnson v. City of Grants Pass*, 72 F.4th 868, 887 n.23 (9th Cir. 2023) (finding proposed class was not "fail-safe" where "the class would have consisted of exactly the same population whether [defendant] won or lost on the merits"); *Kamar*, 375 F. App'x at 736 ("the class action remains manageable because the definition is not a circular one that determines the scope of the class only once it is decided that a class member was actually wronged"); JA2097. All class members will be bound by the judgment rather than being "defined out of the

22

class." *White*, 64 F.4th at 313. (Even if class members could be defined out of the class, there is no potential unfairness to Inmar, because the conspiracy ended in 2007 and the statute of limitations would bar another round of litigation).

In *Adair v. EQT*, on remand from this Court, the district court considered a class defined to include gas claimants "'identified ... in filings with the [Virginia Gas and Oil] Board as unleased owners of the gas estate interests.'" 320 F.R.D. at 420. The district court found that the definition was not fail-safe because it was "theoretically possible that a person *identified* as an unleased owner" in the filings "is not *actually* a[n] [unleased] owner under the law." *Id.* In that case, the person "would lose on the ownership claims, but—because she was identified ... would still be bound by the judgment," such that the proposed definition was not fail-safe. *Id.*

Similarly, class membership here is based on being *identified* in Appendix A of Dr. Grace's Supplemental Report, even if identified entities don't fit the criteria used to prepare Appendix A or otherwise do not have a valid claim.

23

To be fail-safe, manufacturer class membership would need to be expressly contingent on liability, *e.g.*: manufacturers that suffered antitrust injury and paid antitrust overcharges (or supracompetitive prices) as a result of the conspiracy between Inmar and IOS. *See White*, 64 F.4th at 303; *Nypl v. JP Morgan Chase & Co.*, No. 15-cv-9300, 2022 WL 819771, at *10 (S.D.N.Y. Mar. 18, 2022) ("The inclusion of 'supracompetitive' in the class definition makes this an impermissible 'fail-safe' class.").

But such a fail-safe definition does not resemble the Fixed-List Class, which does not expressly require that class members suffered antitrust injury, paid "supracompetitive" prices, or that the conspiracy *caused* any injury that manufacturers may have suffered. *See Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891, 2021 WL 2138781, at *3 (M.D. Fla. May 11, 2021) (holding class definition not fail-safe because, "[w]hile *some* elements of [the] claim are present in the proposed definition ..., the class definition does not require meeting all elements of the claim"); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 6:15-MN-2613, 2018 WL 11303199, at *1 (D.S.C. June 20, 2018) (holding class definition not fail-safe where it was based on "specific factual

circumstances" and not "contingent on the meritorious character of such individuals' claims"); *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 WL 2608691, at *13 (S.D. Ohio June 16, 2017) (rejecting fail-safe argument where the proposed class "contains none of these requirements" related to the merits); *Parish v. Sheriff of Cook Cnty.*, No. 07-C-4369, 2016 WL 1270400, at *5 (N.D. Ill. Mar. 31, 2016) (holding class definition not fail-safe where "[m]embership in the class is not dispositive of liability"); *Abella v. Student Aid Ctr., Inc.*, 15-cv-3067, 2015 WL 6599747, at *4 (E.D. Pa. Oct. 30, 2015) (holding class definition not fail-safe where it made "no reference" to one of the "required element[s] for [plaintiff's] claim").

Moreover, a fail-safe class is not "readily ascertainable" because membership cannot be determined until after the jury's verdict on liability. *White*, 64 F.4th at 313; *Bryant*, 2020 WL 6876292, at *2. Here, however, Mr. Dee's has already identified each class member using Inmar's transactional data, and no additional administrative steps are necessary to ascertain membership. *See* Dkt. 287 at 18; JA1447 ("Plaintiffs have 'specifically identif[ied] each class member'"); *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015) (holding that

the class is ascertainable where class members can be identified by reference to records that are in the defendant's control and are useful for identification purposes); *Woodward v. GEICO Advantage Ins. Co.*, No. CV GLR-21-952, 2022 WL 2953053, at *11 (D. Md. July 25, 2022) (finding ascertainability satisfied where "membership determinations will require an evaluation of company records").

> 2. *The Criteria Used in Preparing the Fixed List Are Not Fail-Safe.*

Even if it were appropriate to examine underlying criteria behind how the fixed list was compiled (rather than how the class is explicitly defined), the criteria for creating the list are not fail-safe.

The district court found that the fixed list was "generated … from Dr. Grace's regressions which sought to determine which manufacturers [suffered harm]," and that class membership is therefore "'conditioned on having suffered antitrust injury.'" JA2097 (citing Dkt. 275).

The criteria for inclusion on the list, however, appropriately limit class membership to manufacturers that are similarly situated with Mr. Dee's insofar as they will be able to rely on the individualized results of Dr. Grace's regression analysis as evidence of antitrust injury and damages. Manufacturers to which Dr. Grace's regressions were able to

observe injury are included in the class list, and manufacturers to which fluctuations in volume prevented the regressions from observing injury are not included. JA1724-1725, JA1728-1828.

The class definition could be redefined, without any change in membership, to, e.g.: All manufacturers that paid shipping fees to Inmar or IOS during the class period and that can rely on the same evidence of damages as class representative Mr. Dee's Inc. because the manufacturer is included in Appendix A.

Narrowing the class to members that will rely on the same common evidence is permitted by and consistent with the goals of Rule 23. *See Olean*, 31 F.4th at 669 n.14 ("the court may redefine [an] overbroad class to include *only those members who can rely on the same body of common evidence* to establish the common issue") (emphasis added); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) ("Requiring a putative class to include all individuals who may have been harmed by a particular defendant could also severely undermine the named class representative's ability to present typical claims (Fed.R.Civ.P. 23(a)(3)) and adequately represent the interests of the class (Fed.R.Civ.P. 23(a)(4))."); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623

(1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive….").

While the Fixed-List Class differs from the All-Payer Class in that it excludes manufacturers for which fluctuations in volume masked price increases in Dr. Grace's regressions, the exclusion of potentially uninjured manufacturers from the class *before* trial does not make a class fail-safe, because their exclusion is not contingent on an adverse jury verdict. *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020). In *Vogt*, the Eighth Circuit found that the district court's exclusion of 487 potential class members did not make a class fail-safe where "the district court excluded these class members prior to trial and none of their claims were submitted to the jury," and "all [remaining] members of the class were bound by the judgment." *Id.*

Dr. Grace's Appendix A is composed of 5,280 direct payer manufacturers and excludes 2,533 direct payer manufacturers for which Dr. Grace was unable to observe individualized harm in her regression. Dkt. 302 at 2. The exclusion of those 2,533 manufacturers at the certification stage is not dependent on an adverse jury verdict and therefore not fail-safe. *Vogt*, 963 F.3d at 768.

The district court found that inclusion on the list was "'conditioned on having suffered antitrust injury.'" JA 2097 (citing Dkt. 275).[2] Regardless of whether the jury finds any class member suffered antitrust injury, however, class membership of the Fixed-List Class would not change. *See Adair*, 320 F.R.D. at 420 (finding that class based partly on list of class members identified in a statutorily-mandated filing for gas well operators was not fail-safe where some could have been mistakenly included on the list); *McKeage*, 2014 WL 12754996, at *3 (finding specific list of class members was not fail-safe).

A defendant's argument "that they are not ultimately liable for many of the class members[] ... proves the point" that the class "will include both those entitled to relief and those not" and "is not a proscribed fail-safe class." *Young*, 693 F.3d at 538; *accord Geary*, 2017 WL 2608691, at *13 (citing *Young*, 693 F.3d at 538); *see also Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (finding class was not fail-safe because "liability and class membership are not coterminous").

---

[2] In rejecting the earlier class definition of manufacturers that paid observably higher shipping fees, the court further found that the definition would "require[] a preliminary determination that higher fees constitute an injury that will be remedied by a successful verdict in favor of Plaintiffs." JA1447-1448.

29

Here, Inmar argues that some or all of the proposed class members did not suffer injury and are not entitled to relief. Dkt. 282 at 21-22 (arguing that, *e.g.*, class representative Mr. Dee's and class member Kimberly-Clark did not suffer injury); JA1448 ("[T]he parties dispute whether Plaintiffs' expert's analysis can reliably show antitrust impact"); Dkt. 235 at 1-2, 28-30 (Inmar arguments disputing antitrust injury and liability). Inmar argues, for example, that it is not liable to *any* manufacturers, including those that paid higher prices, because any price increases were not the result of an *unreasonable* restraint of trade, and that the price increases did not "flow[] directly" from the alleged conspiracy. Dkt. 235 at 1-2, 27-30. A finding that class members paid higher prices (as Dr. Grace's regressions sought to demonstrate) therefore would be insufficient to prove liability standing alone. *Id.*

The fact that additional proof beyond the criteria used to develop the class list is required to determine liability demonstrates that the proposed class is not defined in terms of liability. *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) ("Here, the class definition did not presuppose its success, because the liability standard applied by the district court required class members to prove more facts to establish

liability than are referenced in the class definition."); *Kamar*, 375 F. App'x at 736 ("fail-safe" class "precludes membership unless the liability of the defendant is established").

Further, a class definition is not fail-safe if it is based on factual criteria rather than legal criteria, even if there is a strong correlation between the factual criteria and the defendant's liability. *Iverson v. Advanced Disposal Servs., Inc.*, No. 3:18-CV-867-J-39, 2019 WL 2509811, at *3 (M.D. Fla. June 7, 2019) ("While [plaintiffs'] definition may prove to strongly correlate with success or failure on the merits, the qualifying standards to join the class are based on factual criteria, not legal ones."); *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 101-02 (W.D.N.Y. 2019) (finding class defined as employees who were not paid "at least one and one-half times their regular hourly rate for [overtime]" was "ascertainable" and not "fail-safe").

Here, the district court assumed that because paying higher prices is *correlated* with antitrust injury, the class definition is *contingent* on a finding of antitrust injury, but such correlation does not make the class definition fail-safe. JA2097; *Iverson*, 2019 WL 2509811, at *3; *Hardgers-Powell*, 330 F.R.D. at 101-02.

31

Even if the class were defined on the basis of how the list was generated, membership is readily ascertainable and not administratively difficult, because Mr. Dee's has already identified every class member based on those criteria. JA1728-1828, JA1447 ("it is true that Plaintiffs have 'specifically identif[ied] each class member [in Appendix A]'"). Moreover, "individual analyses" were not required to create the list of class members, as Dr. Grace relied on common evidence and methodology.[3] And the proposed class definition "eliminate[s] any Rule 23-specific administrative challenges by defining the classes based on what [was already] accomplished" in Dr. Grace's creation of the list rather than requiring any new or additional analysis. *Adair*, 320 F.R.D. at 400.

## B. Rule 23 Does Not Contain a Prohibition on Fail-Safe Classes.

Even if the proposed class were fail-safe, the district court erred in applying an independent requirement against fail-safe classes separate from the explicit requirements of Rule 23. Specifically, the district court rejected the Fixed-List Class definition on the grounds that "'membership

---

[3] JA1718.

is conditioned on having suffered antitrust injury or impact in the form of increased shipping fees'" and therefore impermissibly "'fail-safe.'" JA2097 (citing Dkt. 275).[4]

As the D.C. Circuit recently held in *White*, a court abuses its discretion if it denies certification "based on a stand-alone and extra-textual rule against 'fail-safe' classes, rather than applying the [Rule 23] factors." 64 F.4th at 313; *see also Rodriguez*, 695 F.3d at 370 ("our precedent rejects the fail-safe class prohibition").

Rule 23 does not contain any explicit prohibition on "fail-safe" classes. *See* Fed. R. Civ. P. 23; *White*, 64 F.4th at 313. "[T]he contention that a class is 'fail-safe' often serves as shorthand for defects in the requirements explicitly set forth in Rule 23[.]" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 530 (S.D.N.Y. 2018).

This Court has not adopted a stand-alone rule against fail-safe classes. *White*, 64 F.4th at 310 (observing that this Court in *EQT Production Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014), "instruct[ed] district court to consider *possibility* of anti-fail safe rule on

---

[4] In its earlier Order denying certification without prejudice (JA1446, JA1448-1449), the district court also cited ascertainability, which is satisfied as discussed in Section I(C), *infra*.

remand") (emphasis added); *Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2014 WL 1875266, at *7 (N.D.W. Va. Feb. 24, 2014) ("[A]bsent Fourth Circuit precedent on the issue, the Court does not find the allegation that Plaintiff presents a 'fail safe' class as a sufficient independent basis for denial of class certification.").

Most circuits similarly have not adopted a stand-alone fail-safe rule. *White*, 64 F.4th at 313 (rejecting stand-alone rule against fail-safe classes in D.C. Circuit); *Rodriguez*, 695 F.3d at 370 (rejecting prohibition of fail-safe classes in the Fifth Circuit); *Melgar*, 681 F. App'x at 607 ("[O]ur circuit's caselaw appears to disapprove of the premise that a class can be fail-safe.") (citing *Vizcaino v. United States District Court*, 173 F.3d 713, 721-22 (9th Cir. 1999)); *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1191 n.6 (10th Cir. 2023) (implicitly recognizing that the Tenth Circuit has not adopted an independent fail-safe requirement); *Bernstein v. Serv. Corp. Int'l*, No. 17-cv-4960, 2018 WL 6413316, at *3 (E.D. Pa. Dec. 6, 2018) ("Because the Third Circuit has not yet adopted the concept of fail-safe classes, I begin with the established ascertainability analysis.") (citation omitted); *Fitzmorris v. N.H. Dep't of Health & Hum. Servs.*, No. 21-CV-25, 2023 WL 8188770, at *8 (D.N.H.

Nov. 27, 2023) ("The First Circuit ... has never held that class certification can be denied on this [fail-safe] basis where the requirements of Rule 23 are otherwise satisfied.") (citing *In re Nexium Antitrust Litig*, 777 F.3d 9, 22 (1st Cir. 2015)); *LIBOR-Based Fin. Instruments*, 299 F. Supp. 3d at 530 ("'fail-safe' often serves as shorthand for [Rule 23] defects").

The requirements for class certification are explicitly set forth in Rule 23. *White*, 64 F.4th at 313-14. "Courts are not free to amend [the Federal Rules of Civil Procedure] outside the process Congress ordered." *Amchem*, 521 U.S. at 620. And "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).

"Courts should stick to Rule 23's specified requirements ... and, in doing so, will likely find any 'fail-safe' concerns assuaged." *White*, 64 F.4th at 313-14. "Rule 23 is a carefully structured rule that, properly applied, already addresses relevant [fail-safe related] defects in the class definition." *Id*. at 313. "[T]he way to guard against [fail-safe] concerns is to 'apply the terms of Rule 23 as written,' which are carefully designed to confer sufficient guarantees of fairness on class action defendants." *Fitzmorris*, 2023 WL 8188770, at *9 (quoting *id*. at 314); *see also* Geoffrey

C. Shaw, Class Ascertainability, 124 Yale L.J. 2354, 2387 (2015) ("Rule 23 already provides the necessary equipment to block failsafe class definitions.").

This Court should not adopt a new independent fail-safe prohibition where Rule 23 already adequately addresses fail-safe concerns. *White*, 64 F.4th at 313-14 (rejecting stand-alone prohibition against fail-safe classes).

### C.    The Fixed-List Class Satisfies Rule 23.

The fail-safe issue is properly analyzed as part of an analysis of whether Rule 23's requirements are satisfied. *Id.* at 315 ("[W]e reject a rule against 'fail-safe' classes as a freestanding bar to class certification ungrounded in Rule 23's prescribed criteria. Instead, district courts should rely on the carefully calibrated requirements in Rule 23....").

Here, the only Rule 23 requirement that the lower court suggested that the Fixed-List Class may have failed to satisfy was ascertainability. Specifically, the Court stated that the Fail-Safe Class definition "mirror[s] the fail-safe classes this court [previously] refused to certify, and fail[s] for the same reason." JA2097 (citing Dkt. 275). The previous

Order rejected the proposed class definition as fail-safe partly because identification of class members "is not straightforward." JA1448.

In the Fourth Circuit, Rule 23's implicit ascertainability requirement means that proposed class members must be "readily identif[iable] ... in reference to objective criteria." *EQT Prod.*, 764 F.3d at 358. "'If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate,'" but "plaintiffs need not be able to identify every class member at the time of certification." *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

This Court has not adopted any heightened ascertainability requirements related to a potentially fail-safe class. *Paulino*, 2014 WL 1875266, at *7; *cf. Bernstein*, 2018 WL 6413316, at *4 ("Because the Court of Appeals has not analyzed ascertainability by employing fail-safe concepts, I see no need to examine whether the proposed classes are fail-safe classes and to what extent that might impede ascertainability.").

Here, the proposed class is not merely ascertainable but has been conclusively *ascertained* because every member of the class has been identified. No additional fact-finding is necessary. Dkt. 287 at 18 (citing

Appendix A, Dkt. 257-25); JA1447. Thus, it is not "'impossible to identify [class members] without extensive and individualized fact-finding.'" *EQT Prod.*, 764 F.3d at 358 (quoting *Marcus*, 687 F.3d at 593).

Moreover, the class is ascertainable because the class definition does not make membership contingent on liability or any other findings. *Moore v. Primecare Med., Inc.*, No. 3:19-CV-106, 2020 WL 1248976, at *5 (W.D. Pa. Mar. 16, 2020) (finding class definition ascertainable and not fail-safe where "class definition does not require the Court to make determinations of liability to determine class membership").

"[I]f the Defendants can objectively determine the precise number of class members there are before trial, the class is ascertainable." *Newton v. Am. Debt Servs., Inc.*, No. C-11-3228, 2015 WL 3614197, at *6 (N.D. Cal. June 9, 2015). "Defendants actually concede this class is ascertainable—albeit without recognizing the concession—by stating the precise number of class members that are in [the] proposed class." *Id.* Here, Inmar recognizes that there are precisely 5,280 class members in the Fixed-List Class. *See* Dkt. 300 at 1 (representation by Inmar that there were 5,280 members in Dr. Grace's Appendix A and in the class proposed in December 2020, which includes the same members as the

38

proposed Fixed-List Class); Dkt. 296 at 8 (same); Dkt. 282 at 10 (same). By recognizing that the Fixed-List Class consists of 5,280 class members, Inmar implicitly concedes ascertainability. *Newton*, 2015 WL 3614197, at *6.

Courts have sometimes considered whether fail-safe classes fail to satisfy four other requirements of Rule 23. *White*, 64 F.4th at 314. First, if class membership depends on a merits determination, and plaintiffs lose on the merits, the class may have zero members and fail to satisfy numerosity. *Id.* Here, class membership is *not* contingent on a merits determination; all 5,280 manufacturers listed in Appendix A will remain in the class regardless of any findings on the merits. Dkt. 287 at 18 (defining proposed class as a fixed list).

Second, a fail-safe class definition could reveal a lack of common issues of law or fact if there are no more specific commonalities than having suffered a violation of the same provision of law. *White*, 64 F.4th at 314 ("Rule 23 does not allow for such a 30,000 foot view of commonality."). Here, class members do not simply allege Sherman Act violations by Inmar. Rather, every class member alleges and will rely on common evidence of the same anti-competitive agreements between IOS

and Inmar, and on common evidence that the class members suffered injury and damages in the same way as the result of those agreements. *See* Section III(C), *infra* (discussing common evidence of class-wide injury); Dkt. 277 at 19-30.

Third, a fail-safe class may be unable to satisfy typicality if named plaintiffs cannot demonstrate that they will remain members of the class at the time of final judgment. *White*, 64 F.4th at 314. Here, Mr. Dee's will remain a class member even if it loses at trial, as membership is defined as a fixed list. Dkt. 287 at 18.

Fourth, a class action may not be superior "if the class would collapse should the plaintiffs lose on the merits." *White*, 64 F.4th at 314. Here, the class of 5,280 members would remain intact even if they lost on the merits. Dkt. 287 at 18.

Because the class satisfies Rule 23's requirements and is not fail-safe, the denial of certification of the Fixed-List class should be reversed.

## II. The District Court Erred in Rejecting the Minimum-Purchase Class as Unascertainable.

The proposed Minimum-Purchase Class is defined as "[m]anufacturers that directly paid" shipping fees to one of the

conspirators during the class period and satisfied objective minimum purchase requirements, *e.g.*, 2.2 million coupons. Dkt. 279 at 9.

The district court improperly rejected the Minimum-Purchase Class definition as not "ascertainable." JA2069-2075. But "[t]he ascertainability inquiry is narrow. If defendants intend to challenge ascertainability, they must be exacting in their analysis and not infuse the ascertainability inquiry with other class-certification requirements." *Byrd*, 784 F.3d at 165.

Ascertainability requires that "a court can readily identify the class members in reference to objective criteria." *EQT Prod.*, 764 F.3d at 358. "[P]laintiffs need not be able to identify every class member at the time of certification," but fail to satisfy ascertainability "'[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials.'" *Id.* (quoting *Marcus*, 687 F.3d at 593). "'The individualized factfinding giving rise to mini-trials that defeat ascertainability are those requiring determinations on the merits – not an administrative review to determine whether an objective element of a class definition is met.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756, at *14 (E.D. Va. Aug. 14, 2020), *report &*

*recommendation adopted*, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021)
(quotation omitted).

Here, Minimum-Purchase Class members are readily identifiable
in reference to objective criteria, and Mr. Dee's has already identified the
3,219 members. JA2072-2073 (citing Dkts. 279-27, 279-31); Dkt. 282 at
10; JA1920-1921 (Decl. of M. Kheyfets, Inmar Expert) ("Plaintiffs' new
proposed manufacturer class comprises of 3,219 purportedly 'damaged'
members."). Inmar does not dispute the composition of the class, or that
membership is based on objective criteria and members are readily
identifiable. *See* Dkt. 282 at 10; JA1920-1921. The ascertainability
requirement has therefore been satisfied. *EQT Prod.*, 764 F.3d at 358;
*Newton*, 2015 WL 3614197, at *6 ("Defendants actually concede this class
is ascertainable ... by stating the precise number of class members").

The district court, relying primarily on an out-of-circuit trial court
decision, held that ascertainability imposes additional hurdles. The court
required that there must be a "connection between Defendants' allegedly
impermissible activities and the classes Plaintiffs seek to certify,"
including for the minimum purchase requirements. JA2074 (citing
*Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602-03 (D. Colo. 1990)). In other

42

words, the class definition cannot be "untethered from the scope of Defendants' alleged wrong." JA2075. And the district court further required that the class definition not "arbitrarily exclude some injured parties from the class." JA2075.

The Fourth Circuit has never recognized an ascertainability requirement of a "connection between Defendants' allegedly impermissible activities and the classes Plaintiffs seek to certify," or a requirement that injured parties cannot be excluded from a class; and neither has any other court of appeals. *See generally* Dkt. 287 at 3-7. To add such requirements would improperly "infuse the ascertainability inquiry with other class-certification requirements." *Byrd*, 784 F.3d at 165.

Several courts have explicitly rejected a requirement that injured persons not be excluded. *Id.* at 167; *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296 (5th Cir. 2001); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 342-44 (7th Cir. 1997) (rejecting argument that nationwide class must be sought in Fair Debt Collection Practices Act ("FDCPA") class action rather than narrower class); *Bennett v. GoDaddy.com LLC*, No. CV-16-03908, 2019 WL 1552911, at *12 (D. Ariz. Apr. 8, 2019)

(rejecting argument that "certification of the broadest possible class" must be sought); *Vaughn v. CSC Credit Servs., Inc.*, No. 93 C 4151, 1994 WL 449247, at *3 (N.D. Ill. Mar. 1, 1994) ("The fact that a broader class could have been certified has not prevented courts from certifying smaller classes.") (collecting cases).

As the Third Circuit explained in *Byrd*:

> We decline to engraft an 'underinclusivity' standard onto the ascertainability requirement. Individuals who are injured by a defendant but are excluded from a class are simply not bound by the outcome of that particular action .... *Requiring a putative class to include all individuals who may have been harmed by a particular defendant could also severely undermine the named class representative's ability to present typical claims (Fed.R.Civ.P. 23(a)(3)) and adequately represent the interests of the class (Fed.R.Civ.P. 23(a)(4))*. The ascertainability standard is neither designed nor intended to force all potential plaintiffs who may have been harmed in different ways by a particular defendant to be included in the class in order for the class to be certified.

784 F.3d at 167 (emphasis added); *accord Bertulli*, 242 F.3d at 296 & n.25 (affirming certification where the district court chose a class definition that excluded some injured persons, where the narrower class had greater cohesion and commonality of interest than a broader class would have, and "non-members of the class remain free to assert their rights").

44

Because ascertainability is an implied requirement untethered to the text of Rule 23, the ascertainability requirement should be narrowly construed and should not be expanded beyond the requirements already explicitly recognized by this Court. *Jones*, 549 U.S. at 212.

Requiring that classes be defined and limited only in connection with defendants' "impermissible activities" is at odds with a fail-safe requirement of *not* defining the class based on harm from defendants' impermissible activities. *Byrd*, 784 F.3d at 167 (rejecting underinclusivity standard and finding that requiring a class to be defined in connection with being harmed by defendant in a particular way "approaches requiring a fail-safe class").

The district court also raised a concern that excluding injured class members frustrates one of the purposes of class actions—avoiding multiple lawsuits. JA2075 (citing *Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 278 (E.D. Va. 2014)). In *Fariasantos*, however, the defendant argued that "'serial [county-by-county] class actions aimed at avoiding the statutory damages cap [for FDCPA actions] are not a superior method of adjudication,'" and the court addressed the problem by *granting* certification of a *broader* state-wide class. 303 F.R.D. at 278;

45

*see also* Dkt. 287 at 4-5 (distinguishing similar FDCPA case cited by Inmar where court rejected plaintiffs' effort to evade FDCPA statutory damages cap through "'numerous unnatural classes'") (quoting *Wenig v. Messerli & Kramer P.A.*, No. 11-CV-3547, 2013 WL 1176062, at *6 (D. Minn. Mar. 21, 2013)). No such statutory damages cap is relevant here, and the solution to an underinclusivity problem would be to *grant* certification of a *broader* class. *Fariasantos*, 303 F.R.D. at 278.

The district court raised a concern that excluding some injured manufacturers would deny them "the benefits of class membership." JA2073-2074. But denying certification of the entire class would exacerbate that problem, not remedy it.

Even if "connection between Defendants' allegedly impermissible activities and the classes" were a requirement in this circuit, JA2074, Mr. Dee's has satisfied that requirement. The Minimum-Purchase Class is limited to direct payers of shipping fees, and Mr. Dee's alleges that all direct payers were exposed to anticompetitive conduct. *See* Dkt. 298 at 5-17; Manual for Complex Litig. § 21.222 (4th ed.) (giving example of appropriate class definition of "those persons and companies that purchased specified products ... from the defendants during a specified

period"); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 351 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) (certifying class of direct purchasers).

The minimum purchase requirements ensure a *stronger* "connection between Defendants' allegedly impermissible activities and the class[]," ensuring the class is more closely "[]tethered [to] the scope of Defendants' alleged wrong," JA2074, as "[t]he more a class member was exposed to the conspirators' services, the more likely they were to have suffered harm." Dkt. 287 at 8; *see also* JA1869-1908 (listing damages by number of months of purchases).

In *Daigle*, cited by the district court, the plaintiffs made no effort to identify which individuals were exposed to the defendants' conduct or suffered injury, and class membership was defined by arbitrary geographic boundaries and not limited to individuals who were exposed to or likely injured by defendant's conduct, which involved a toxic waste disposal pond. 133 F.R.D. at 602-03. By contrast, in *Boggs v. Divested Atomic Corp.*, the court certified a class defined as residents within six miles of a radioactive materials plant where an expert testified that persons within six miles were "exposed to radiation," and that "'doses

47

within a six-mile radius are larger than doses outside of a six-mile radius.'" 141 F.R.D. 58, 62 (S.D. Ohio 1991).

Here, the proposed minimum purchase requirements are akin to *Boggs*, not *Daigle*. All purchasers were exposed to the conspiracy; imposing the minimum-purchase requirements limited the class to manufacturers that had greater exposure to the conspiracy; and the minimum-purchase requirements are correlated with an increased likelihood and magnitude of damages. *Compare* JA1870-1871 (reflecting modest damages for manufacturer class members with 9 months of purchases), *with* JA1901-1905 (reflecting substantially higher damages for manufacturers with 60 months of purchases), *and* JA1906-1908 (reflecting that fewer months of purchases was correlated with an increased likelihood that manufacturers had no observable damages).

Courts have regularly approved class definitions that narrowed classes using criteria designed to exclude mostly uninjured class members, as here, even if some injured class members were also excluded. *See, e.g.*, *Byrd*, 784 F.3d at 166-67 (rejecting argument that revision to class definition that excluded injured persons resulted in impermissibly underinclusive class definition); *In re Marriott Int'l, Inc.*,

*Customer Data Security Breach Litig.*, 341 F.R.D. 128, 143 (D. Md. 2022) (narrowing class to "exclude [certain] individuals who are uninjured"); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 3704727, at *3 (E.D. Va. Aug. 20, 2021) (certifying class narrowed to ensure it did not contain too many uninjured members); *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611571, at *4 (E.D. Va. Sept. 2, 2016) (permitting narrowing "to make the proposed class more manageable"); *Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (certifying class excluding mostly uninjured members that was a "narrower version of the [prior] class definition"); *Dennis v. Saks & Co.*, 74Civ.4419, 1975 WL 909, at *6 (S.D.N.Y. July 10, 1975) (narrowing class to purchasers of more than $250).

Thus, ascertainability is satisfied, and the Minimum-Purchase Class should be certified in the alternative.

## III. The District Court Erred in Finding Uninjured Class Members Defeated Predominance of the All-Payer Class.

The proposed All-Payer Class is defined as "manufacturers that directly paid [Inmar subsidiary] [Defendant-Appellee] C[arolina] C[oupon] C[learing] shipping fees during the class period and/or were

49

clients of [Inmar subsidiary] [Defendant-Appellee] C[arolina] M[anufacturer's] S[ervices] and directly paid shipping fees to IOS." Dkt. 298 at 2.

The district court abused its discretion in: (a) finding that 2,533 All-Payer Class members were uninjured; (b) applying a *per se* rule against uninjured class members rather than applying Rule 23; and (c) finding that individualized issues will predominate where Mr. Dee's will rely on common evidence to prove injury, and any uninjured class members can easily be winnowed out using common evidence.

## A. The District Court's Factual Finding on the Number of Uninjured Class Members Was Clearly Erroneous.

The district court made the erroneous factual finding that the "All Payer Manufacturer class contains 2,533 uninjured members," or approximately 32% of the class. JA2095. As Dr. Grace testified, she did not find "that those guys weren't harmed." JA2014. Rather, she explained that industry pricing was "largely dictated by volume," JA1980, in which "larger volume dictates a lower price," JA2013. For the 2,533 manufacturers where there were no *observable* price increases during the conspiracy period in the regression, "those are cases where volume dominates," so "we can't *observe* harm" in the regression. JA2013-2014

50

(emphasis added). "It doesn't mean that there aren't damages. It just means that they get clouded" by volume. JA2015. For some of those manufacturers, they had *no* purchases prior to the conspiracy period, such that it was impossible to compare individualized pricing before the conspiracy with prices during the conspiracy. JA1980. There was no evidence supporting the finding that 2,533 class members were *uninjured*.

Courts have recognized that the absence of observable harm is distinct from class members being uninjured. *Olean*, 31 F.4th at 680 (explaining that regression model where 28% of class members had no observable injury did not mean they were "uninjured" but reflected only that those class members had "no or limited transactions during the benchmark period"); *see also In re Polyester Staple Antitrust Litig.*, No. 3:03CV1516, 2007 WL 2111380, at *20 n.54 (W.D.N.C. July 19, 2007) (noting that presumption of impact may be applied in some cases "'to deal with the question of impact when there are multiple variables affecting the price paid by the plaintiffs'") (quotation omitted).

Dr. Grace testified that a "good estimate" of impact and damages would be to take median price increase (i.e., 28 cents) times volume.

JA1979-1980. Because the All-Payer Class is limited to manufacturers with non-zero volume, that calculation would result in harm to *all* manufacturer class members. In other words, Dr. Grace's testimony indicated that *zero* members of the All-Payer Class were uninjured. And Inmar offered no evidentiary basis to suggest that 2,533 class members were uninjured. *Cf. Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 864 (7th Cir. 2018) (rejecting uninjured class member argument and affirming certification where "*defendants have not ... shown* 'a great many' [uninjured class members]") (emphasis added) (quotation omitted).

The district court's erroneous factual finding was not harmless, as it was the basis for its rejection of the All-Payer Class as containing too many uninjured class members.

## B. The District Court Imposed an Incorrect Legal Standard for Uninjured Class Members.

Even if the All-Payer Class contained a large number of uninjured members, the district court erred in imposing a *per se* rule that "courts [cannot] certify classes with large numbers of uninjured members." JA2092. "[A] per se rule that a class cannot be certified if it includes more

than a de minimis number of uninjured class members" is "inconsistent with Rule 23(b)(3)." *Olean*, 31 F.4th at 669 & n.13.

This Court has not adopted such a *per se* rule. JA2093 ("The Fourth Circuit has not endorsed an approach to the issue of uninjured class members."); *cf. Olean*, 31 F.4th at 669 n.13 (rejecting *per se* rule and explaining that the courts in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.2d 618 (D.C. Cir. 2019) and *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) applied a fact-specific analysis of predominance rather than a *per se* rule related to uninjured class members).

This Court should not adopt a *per se* rule, which would be contrary to the explicit requirements of Rule 23. *Olean*, 31 F.4th at 669 (holding that *per se* uninjured class member rule "is inconsistent with Rule 23(b)(3)"); *Amchem Prods.*, 521 U.S. at 620 ("Courts are not free to amend [the Federal Rules]."); *White*, 64 F.4th at 313-14 ("Courts should stick to Rule 23's specified requirements"); *Asacol*, 907 F.3d at 51 (finding that the issue of uninjured class members should be resolved based on "the requirement of Rule 23(b)(3) that common issues must predominate"). Nor do policy concerns support the creation of a new *per se* rule. *Nexium*, 777 F.3d at 22 ("At worst the inclusion of some uninjured class members

53

is inefficient, but this is counterbalanced by the overall efficiency of the class action mechanism.").

By applying a legal standard inconsistent with Rule 23's explicit requirements, the district court abused its discretion. *Olean*, 31 F.4th at 669.

### C.    The All-Payer Class Satisfies Predominance.

The issue of uninjured class members is properly addressed under Rule 23's predominance prong. *Id.* at 668. Predominance requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted).

"[T]he purpose of the predominance inquiry into uninjured class members ... 'is to test whether any dissimilarity among the claims of class

members can be dealt with in a manner that is not inefficient or unfair.'"
*Zetia*, 2020 WL 5778756, at \*16 (quoting *Asacol*, 907 F.3d at 51-52).

"Merits questions may be considered ... only to the extent[] that
they are relevant to determining whether the Rule 23 prerequisites for
class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr.
Funds*, 568 U.S. 455, 466 (2013). "[I]t would 'put the cart before the
horse,' to read Rule 23 to require that a plaintiff demonstrate prior to
class certification that each class member is injured." *Asacol*, 907 F.3d at
58 (quotation omitted). "[A] district court is limited to resolving whether
the evidence establishes that a common question is *capable* of class-wide
resolution, not whether the evidence in fact establishes that plaintiffs
would win at trial." *Olean*, 31 F.4th at 666-67; *see also Titanium Dioxide*,
284 F.R.D. at 345 (plaintiffs "need not *prove*" antirust impact, but only
demonstrate that "'antitrust impact is *capable of proof* at trial through
[common] evidence'") (quoting *In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305, 311-12 (3d Cir. 2008)).

"If the court thought that no class can be certified until proof exists
that every member has been harmed, it was wrong." *Suchanek v. Sturm
Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014). "[A] class may still be

properly certified even if it 'consists largely ... of members who are ultimately shown to have suffered no harm.'" *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1185 (10th Cir. 2023) (quoting *Messner*, 669 F.3d at 824). Where the concern is that the proposed class exhibits some fatal similarity, such as that its expert evidence is inaccurate, that defense is common to the class and should be addressed as a matter of summary judgment, not class certification. *Tyson Foods*, 577 U.S. at 457.

Certification can be granted where a large number of uninjured class members were *exposed* to the challenged conduct but is more questionable where those members were not exposed and "'*could not* have been harmed.'" *Black*, 69 F.4th at 1185 (quoting *Messner*, 669 F.3d at 824); *accord Ruiz Torres*, 835 F.3d at 1136 ("[A] flaw that may defeat predominance[] ... [includes] the existence of large numbers of class members who were never *exposed* to the challenged conduct to begin with."). Persons who purchased a product "before the defendant possessed market power" are an example of persons "who *could not* have been injured" by anticompetitive conduct. *Suchanek*, 764 F.3d at 758 (citing *Messner*, 669 F.3d at 824-25). Here, all proposed class members are purchasers that paid shipping fees that the conspirators set after

markets and customers were allocated, and were therefore "exposed" to the challenged conduct and could have been injured. Dkt. 298 at 2 (limiting class membership to purchasers during class period).

If plaintiffs rely on common evidence, and that evidence demonstrates that "most" class members did not suffer injury, that may support an "argument *not* for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate [the defendant]." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (emphasis added).

On the other hand, predominance will not be satisfied if "full-blown individual trials" are necessary to establish injury for thousands of class members. *Rail Freight*, 934 F.3d at 625; *see also Asacol*, 907 F.3d at 53-54 (holding that common issues would not predominate absent a "mechanism that can manageably remove uninjured persons from the class").

Here, Mr. Dee's will rely on common evidence capable of proving classwide injury, and the district court erred in determining the persuasiveness of the evidence on the merits, which is a question for the jury. *Tyson Foods*, 577 U.S. at 459 ("Once a district court finds evidence

57

to be admissible, its persuasiveness is, in general, a matter for the jury."); *Amgen*, 568 U.S. at 466; *Olean*, 31 F.4th at 666-67 ("a district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue."); *Thorn*, 445 F.3d at 319 ("The likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper."); *Asacol*, 907 F.3d at 58; *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015); *Titanium Dioxide*, 284 F.R.D. at 345.

Five types of common evidence presented by Mr. Dee's are capable, separately or collectively, of showing impact to all class members, including: (1) Dr. Grace's analyses; (2) evidence of a widespread price war but for the conspiracy; (3) evidence of systematic price increases by the conspirators; (4) market-structure analysis; and (5) the presumption that a horizontal antitrust conspiracy harms all class members. JA2100; Dkt. 298 at 5-17 (detailing evidence).

First, Dr. Grace's regression (Grace Supp., JA1709-1838) is common evidence, even if some class members might lose on the merits

based on the evidence. *See Olean*, 31 F.4th at 680 (certifying class even though jury might find regression unpersuasive where 28% of class members had limited transactions and therefore had no observable injury); *Messner*, 669 F.3d at 819, 822-23 (finding regression sufficient to satisfy predominance despite concession about uninjured class member, because the fact that some class members' claims will fail on the merits is "generally irrelevant" to certification).

Alternatively, Dr. Grace testified that impact and damages to all purchasers could be calculated by multiplying the median shipping-fee increase (28 cents) by volume.[5] *Cf. Olean,* 31 F.4th at 673 n.19, 675 (finding 28% of the class with no statistically significant impact could rely on damages estimate "developed by multiplying the [average] overcharge [percentage] estimate ... by the appropriate sales volume").

The lower court found this testimony unpersuasive, but its criticisms were misplaced. The court found that Dr. Grace's testimony related only to market harm, not individual harm, and could not demonstrate harm to all class members. JA2100-2101. But Dr. Grace testified that she could "determine who is harmed and how much" using

---

[5] JA1976-1977, JA1979-1980, JA1709-1838.

the "median price change" times "volume," JA1979, and based on that formula, every manufacturer with purchases suffered damages.

The court criticized the use of "average" rather than "median" price increases, but Dr. Grace's proposed formula involved *median* price increases. JA1979; *cf. In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 238 (4th Cir. 2021) ("we find no issue with the practice of proving injury by class-wide averages, which the district court correctly characterized as 'common.'").

The court found Dr. Grace's evidence of classwide injury was unpersuasive when weighed against Dr. Grace's purported finding that "32% of the class was uninjured." JA2111. But the court should not have weighed the persuasiveness of the evidence, *Tyson Foods*, 577 U.S. at 459, and Dr. Grace did not find that *any* class members were uninjured, much less 32%. JA2014 ("So that volume impact dominates for those observations. So it's not that those [purchasers] weren't harmed[.]").

Second, IOS's CEO admitted that, in the absence of the conspiracy, there would have been a widespread price war that would have lowered prices. JA1471-1472, JA1474. The district court inappropriately weighed the persuasiveness of this evidence. JA2106; *Tyson Foods*, 577 U.S. at

60

459. Every class member could have relied on this evidence to demonstrate injury, especially given that IOS's CEO analogized the threatened price war to "the worst hurricane to hit North Carolina [i.e., Inmar][6] in the last 200 years." JA1507, JA1478; *Tyson Foods*, 577 U.S. at 455 (explaining that evidence "relevant in proving a plaintiff's individual claim[] ... cannot be deemed improper merely because the claim is brought on behalf of a class").

Third, IOS admitted that it systematically raised shipping fees because of the conspiracy, and Inmar admitted that it followed IOS's lead on fees. JA1477, JA1474, JA1058-1059, JA1065-1066, JA1007, JA1683, JA 1666. The district court found such evidence unpersuasive when weighed against Dr. Grace's purported finding that "only 68% of the class was injured." JA2107. But Dr. Grace did not make such a finding, JA2014, and such weighing of the evidence on the merits is inappropriate. *Tyson Foods*, 577 U.S. at 459.

Fourth, Dr. Grace found that the market conditions were consistent with those that have been found to support an inference of classwide

---

[6] Inmar is based in North Carolina and its manufacturer processor subsidiary is named Carolina Manufacturing Services.

impact, including high barriers to entry,[7] commodity services,[8] lack of

substitutes,[9] declining volume,[10] and a highly concentrated market.[11] *See,*

*e.g.*, *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211,

at *31 (E.D. Pa. Oct. 19, 2015) ("Many courts have accepted market-

structure analyses in finding predominance with respect to antitrust

impact."). A reasonable jury could credit the market-structure evidence

in combination with other evidence. *Blood Reagents*, 2015 WL 6123211,

at *31.

Finally, the "'the prevailing [economic] view [is that] price-fixing

affects all market participants, creating an inference of class-wide impact

even when prices are individually negotiated.'" *Olean*, 31 F.4th at 671

(quoting *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254 (10th Cir.

2014)); *see also Polyester Staple*, 2007 WL 2111380, at *19 n.53 ("impact

may be presumed in price-fixing or customer allocation conspiracy

cases"). Courts have recognized the difficulty in observing impact where

multiple variables affect price, and that a presumption of impact may be

---

[7] JA0808, JA0812-0816, JA0818-0821.

[8] JA1436-1437.

[9] JA0808, JA0821.

[10] JA1975.

[11] JA0809-0811.

appropriate in such situations. *Polyester Staple*, 2007 WL 2111380, at \*20 n.54 ("'[T]he Third Circuit created the *Bogosian* short-cut to deal with the question of impact when there are multiple variables affecting the price paid by the plaintiffs.'") (quoting *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, No. 02-cv-6030, 2006 WL 891362, at \*11 (D.N.J. Apr. 4, 2006)). The district court rejected the presumption as applying only when there is additional evidence of classwide impact. JA2109. But Mr. Dee's has presented such additional evidence, discussed above.

Even if there were many uninjured class members, the presence of uninjured class members does not defeat certification where there is a "winnowing mechanism" that is "truncated enough to ensure that the common issues predominate." *Rail Freight*, 934 F.3d at 625 (citing *Asacol*, 907 F.3d at 51-54); *accord Olean*, 31 F.4th at 669; *Ruiz Torres*, 835 F.3d at 1137 ("non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members"); *Nexium*, 777 F.3d at 19-21 ("At the class certification stage, the court must be satisfied that, prior to judgment, it will be possible to establish

63

a[n administratively feasible] mechanism for distinguishing the injured from the uninjured class members.").

Here, the district court recognized that, with respect to the *retailer* class, potentially uninjured "class members have been identified[] … and could be winnowed from the class without individual issues subsuming class-wide ones." JA2112. In analyzing the manufacturer class, the district court inconsistently and erroneously found that "Plaintiffs do not claim … that they can establish a winnowing mechanism." JA2094. In fact, however, Mr. Dee's explained that "there is a common method for identifying [potentially] uninjured class members, who have already been identified" using common evidence. Dkt. 287 at 8 (citing Dkts. 277-28, 277-32). If the jury isn't persuaded by common evidence of injury for the 2,533 potentially uninjured class members, then judgment will be entered against them at trial without resorting to individualized trials. *Olean*, 31 F.4th at 681; *Butler*, 727 F.3d at 799. This winnowing mechanism will not require individualized evidence, so common evidence will predominate. *Rail Freight*, 934 F.3d at 625.

64

## IV.    If Necessary, the Court Should Revise the Class Definition.

"Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825. "[T]he court may redefine the overbroad class to include only those members who can rely on the same body of common evidence to establish the common issue." *Olean*, 31 F.4th at 669 n.14. "The solution for cases [involving a fail-safe class definition that satisfies Rule 23] is for the district court either to work with counsel to eliminate the problem or for the district court to simply define the class itself." *White*, 64 F.3d at 315.

In *EQT Production*, this Court instructed the district court on remand to "address whether it is possible to define the classes without creating a fail-safe class" "as part of its class-definition analysis." 764 F.3d at 360 n.9; *see also Cummins v. Ascellon Corp.*, No. 19-cv-2953, 2020 WL 6544822, at *7 (D. Md. Nov. 6, 2020) ("Several courts have found that a 'fail-safe class definition' is not necessarily fatal in the Fed.R.Civ.P. 23 context," but "counsel for reformation *where necessary*"); *Chado v. Nat'l*

*Auto Inspections, LLC*, No. 17-cv-2945, 2019 WL 1981042, at *4 (D. Md. May 3, 2019) ("[T]he remedy to that problem is not, as Defendants suggest, decertification of the class and dismissal of the case without prejudice ... but instead to accept Plaintiffs' suggestion to redefine the class."). "[D]istrict courts have broad discretion to modify class definitions ...." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

If this Court finds that none of the proposed class definitions is appropriate, this Court should resolve the issue by redefining the class. *Messner*, 669 F.3d at 825.

Alternatively, this Court should instruct the district court, as it did in *EQT Production*, to determine "whether it is possible to define the classes" in a permissible manner. 764 F.3d at 360 n.9; *see also White*, 64 F.4th at 315 ("district court [may] work with counsel to eliminate the problem or ... simply define the class itself"); *Chado*, 2019 WL 1981042, at *4-5 (redefining class).

## CONCLUSION

Denying certification of a manufacturer class would cause the very harm decried by the Third Circuit in *Byrd*. Contrary to the letter, spirit,

and purpose of Rule 23, it would "severely undermine the named class representative's ability to present typical claims (Fed.R.Civ.P. 23(a)(3)) and adequately represent the interests of the class (Fed.R.Civ.P. 23(a)(4)). 784 F.3d at 167.

For the foregoing reasons, the district court's denial of certification of the manufacturer class should be reversed, one of the proposed classes should be certified, and the case should be remanded for further proceedings.

Date: December 27, 2023

KOTCHEN & LOW LLP

/s/*Daniel Low*
Daniel Low
Daniel Kotchen

BROOKS PIERCE MCLENDON HUMPHREY & LEONARD LLP

Kearns Davis
Matthew B. Tynan

*Attorneys for Plaintiffs-Appellants Mr. Dee's Inc. et al.*

# CERTIFICATION

I certify that this brief contains 12,658 words excluding those portions exempted from the word limit requirements, in compliance with the Federal Rules of Appellate Procedure.

I further certify that the text of this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it is set in Century School Book, size 14.


Date:  December 27, 2023

KOTCHEN & LOW LLP

/s/*Daniel Low*
Daniel Low
Daniel Kotchen

BROOKS PIERCE MCLENDON
HUMPHREY & LEONARD LLP

Kearns Davis
Matthew B. Tynan

*Attorneys for Plaintiffs-
Appellants Mr. Dee's Inc. et al.*